# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2020

Nos. 18-1036, 18-1835(L), 19-223(Con)

JIMMY CHERY, AKA KEVIN JUNIOR CHERY,
KIMANIE TAVOY GRAHAM,
*Petitioners*,

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
*Respondent*.

On Appeal from the Board of Immigration Appeals

ARGUED: JUNE 21, 2021
DECIDED: OCTOBER 15, 2021

Before: NEWMAN, CABRANES, and PARKER, *Circuit Judges*.

Petitioners Jimmy Chery and Kimanie Tavoy Graham seek review of decisions of the Board of Immigration Appeals affirming decisions of Immigration Judges ordering their removal from the United States, denying relief from removal, and denying Graham's motion to reopen. These cases present two questions: First, whether Petitioners' narcotics convictions under Connecticut General Statute § 21a-277(a) are controlled substance or aggravated felony drug trafficking offenses under the Immigration and Nationality Act; and, second, whether our jurisdictional holding in *Banegas Gomez v. Barr*, 922 F.3d 101 (2d Cir. 2019), survives the Supreme Court's ruling in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). We answer both questions in the affirmative and, accordingly, we **DENY** the petitions.

————————

ELYSSA N. WILLIAMS, The Bronx Defenders, Bronx, NY, *for Petitioners*.

DAVID J. SCHOR, Office of Immigration Litigation, Civil Division (Jeffery Bossert Clark, Acting Assistant Attorney General, Kohsei Ugumori, Senior Litigation Counsel, *on the brief*), U.S. Department of Justice, Washington, DC, *for Respondent* in 18-1036.

TIM RAMNITZ, Office of Immigration Litigation, Civil Division (Joseph H. Hunt, Assistant Attorney General, Shelley R. Goad, Assistant Director, *on the brief*), U.S. Department of Justice, Washington, DC, *for Respondent* in 18-1835(L), 19-223(Con.).

JON O. NEWMAN, JOSÉ A. CABRANES, BARRINGTON D. PARKER, *Circuit Judges*:

These petitions for review present two questions: first, whether convictions under Connecticut General Statute ("CGS") § 21a-277(a), as in effect at the time of Petitioners' convictions in 2014, are controlled substance or aggravated felony drug trafficking offenses under the Immigration and Nationality Act ("INA"); and second, whether our holding in *Banegas Gomez v. Barr*, 922 F.3d 101 (2d Cir. 2019)—that a notice to appear that omits the hearing date and time is nonetheless sufficient to vest jurisdiction in the immigration courts—is still good law in light of the Supreme Court's subsequent decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). Answering both questions in the affirmative, we **DENY** the petitions.

## I. BACKGROUND

Although the petitions raise a common question, they arise in different factual and procedural contexts that we detail briefly here.

## A. Jimmy Chery

In 1998, Chery, a native and citizen of Haiti, entered the United States without authorization at the age of 17. The following year, after he timely applied for asylum, the Department of Homeland Security ("DHS") placed him in removal proceedings based on his unlawful presence. In 2000, he failed to appear at a hearing and was ordered removed in absentia.

More than a decade later, in 2014, Chery was convicted, on an *Alford* plea,[1] of sale or possession with intent to sell narcotics under CGS § 21a-277(a) and sentenced to 12 years' imprisonment, to be suspended after 4 years. After being released into immigration custody, Chery successfully reopened his removal proceedings and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), asserting that the Haitian

---

[1] "Under *North Carolina v. Alford*, 400 U.S. 25 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as *if he were guilty* to avoid the risk of proceeding to trial." *United States v. Glenn*, 744 F.3d 845, 847 n.1 (2d Cir. 2014) (citation omitted).

4

government had persecuted him and members of his family on account of his family's political activities in the late 1990s.

An immigration judge ("IJ") found Chery removable for having entered the United States without authorization, and concluded, further, that Chery was ineligible for asylum and withholding of removal under 8 U.S.C. §§ 1158(b)(2)(A)(ii) and 1231(b)(3)(B)(ii) because his conviction under CGS § 21a-277(a) was a "particularly serious crime"; i.e., it was categorically an aggravated felony drug trafficking crime as defined in 8 U.S.C. § 1101(a)(43)(B).

The Board of Immigration Appeals ("BIA") dismissed Chery's appeal, agreeing with the IJ that Chery's conviction under CGS § 21a-277(a) was a drug trafficking aggravated felony. Chery's petition for review followed, and we granted in forma pauperis status only as to the issue of whether a conviction under CGS § 21a-277(a) is an aggravated felony under the INA.

## B. Kimanie Tavoy Graham

Graham, a native and citizen of Jamaica, was admitted to the United States as a visitor in 2002; he overstayed his visa but later adjusted to lawful permanent resident status. In 2014, Graham was convicted, on an *Alford* plea, of possession of narcotics with intent to sell in violation of CGS § 21a-277(a), and of possession of a weapon in a motor vehicle in violation of CGS § 29-38. The following year, DHS charged Graham as removable under 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i), and (C), on the grounds that his convictions constituted a controlled substance offense, an aggravated felony drug trafficking offense, and a firearm offense. He challenged the charges of removability, argued that he was eligible to readjust to lawful permanent resident status based on his marriage to a U.S. citizen, and applied for deferral of removal under the CAT, asserting a fear that gangs in Jamaica would torture him on account of a family member's past gang connection.

An IJ found Graham removable as charged, noted that his aggravated felony conviction barred adjustment of status, denied his CAT claim as speculative, and ordered him removed. The BIA dismissed Graham's appeal, agreeing with the IJ that Graham was removable because his conviction under CGS § 21a-277(a) was both a controlled substance offense and an aggravated felony drug trafficking offense.

Graham timely moved the BIA to reopen and terminate removal proceedings, arguing that the IJ lacked jurisdiction. The BIA denied his motion.

Graham timely petitioned for review of both BIA decisions, and those petitions were consolidated and heard in tandem with Chery's petition.

## II. DISCUSSION

The questions presented in these petitions are (1) whether a 2014 narcotics conviction under CGS § 21a-277(a) is a controlled substance

7

offense and an aggravated felony drug trafficking crime under the INA, 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii), (B)(i), and (2) whether our decision in *Banegas Gomez*, 922 F.3d 101, forecloses Graham's argument that the IJ lacked jurisdiction over removal proceedings given defects in his notice to appear.[2] We review both legal issues de novo.[3]

## A. Application of the Categorical Approach to CGS § 21a-277(a)

We employ a "categorical approach . . . to assess whether a state drug conviction triggers removal under the immigration statute."[4] Under this approach, "[a] state offense categorically matches with a generic federal definition of a corresponding aggravated felony 'only if a conviction of the state offense necessarily involved facts equating

---

[2] We do not reach Graham's argument that his conviction under CGS § 29-38 is not categorically a firearms offense because the BIA did not reach that ground of removability and thus it is not before us. *Cf. Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005) (declining to review an IJ holding rejected by the BIA).

[3] *Harbin v. Sessions*, 860 F.3d 58, 63 (2d Cir. 2017).

[4] *Mellouli v. Lynch*, 575 U.S. 798, 806 (2015); *see also Flores v. Holder*, 779 F.3d 159, 165 (2d Cir. 2015).

8

to the generic federal offense.'"[5]  "Accordingly, only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant, and the factual aspects of a defendant's situation are immaterial."[6]  "If the criminal statute punishes conduct that falls outside the INA's definition, then the crime does not constitute a [removable offense]."[7]

However, if a noncitizen's statute of conviction is divisible by "list[ing] elements in the alternative, and . . . creat[ing] a separate crime associated with each alternative element,"[8] we apply a "modified categorical approach" to determine from the record "which part of the statute" formed the basis for the conviction.[9]  "The court can then do

---

[5] *Harbin*, 860 F.3d at 64 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)).

[6] *Dos Santos v. Gonzales*, 440 F.3d 81, 84 (2d Cir. 2006) (citation and internal quotation marks omitted).

[7] *Richards v. Ashcroft*, 400 F.3d 125, 128 (2d Cir. 2005).

[8] *Harbin*, 860 F.3d at 64.

[9] *See United States v. Beardsley*, 691 F.3d 252, 264 (2d Cir. 2012); *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the

9

what the categorical approach demands: compare the elements of the crime of conviction . . . with the elements of the generic crime."[10]

For drug crimes, a controlled substance offense is one involving a substance listed on the controlled substance schedules of the Controlled Substances Act ("CSA"), 21 U.S.C. § 802, *see* 8 U.S.C. § 1227(a)(2)(B)(i), and an aggravated felony is defined, in relevant part, as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)," 8 U.S.C. § 1101(a)(43)(B).  In turn, a drug trafficking crime is defined as "any felony punishable under the [CSA]."[11]

Petitioners were convicted under CGS § 21a-277(a), which punishes "[a]ny person who manufactures, distributes, sells,

---

indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.").

[10] *Descamps v. United States*, 570 U.S. 254, 257 (2013).

[11] 18 U.S.C. § 924(c)(2); *see also Lopez v. Gonzales*, 549 U.S. 47, 60 (2006) ("[W]e hold that a state offense constitutes a 'felony punishable under the [CSA]' only if it proscribes conduct punishable as a felony under that federal law.").

prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance."[12]  We must determine whether both the acts proscribed and the substances involved in CGS § 21a-277(a) categorically match the analogous federal statute, 21 U.S.C. § 841(a)(1), which makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."[13]

### 1.  Proscribed Acts

In *United States v. Savage*, we held that CGS § 21a-277(a) was not categorically a controlled substance offense under the sentencing guidelines because it criminalizes "a mere offer to sell, absent

---

[12] We cite throughout the statutes in effect at the time of Petitioners' convictions in 2014.  *See Mellouli*, 575 U.S. at 802, 808.

[13] *See Pascual v. Holder*, 723 F.3d 156, 158 (2d Cir. 2013).

11

possession," including a fraudulent offer to sell.[14]  But approximately five years later, in *State v. Webster*, 60 A.3d 259 (Conn. 2013), the Connecticut Supreme Court held that an "offer" under Connecticut law requires "actual, constructive or attempted transfer" and "the presentation of a controlled substance for acceptance or rejection."[15]

The BIA found, and the Government argues, that *Webster* supersedes *Savage* to the extent that the latter concluded that CGS § 21a-277(a) criminalizes a fraudulent offer to sell and thus did not categorically include conduct constituting a felony under the CSA.  We agree.  Given that an "offer" under Connecticut law requires "actual, constructive or attempted transfer" and "the presentation of a controlled substance for acceptance or rejection,"[16] the definition of

---

[14] 542 F.3d 959, 965–66 (2d Cir. 2008); *compare* U.S. Sentencing Guidelines Manual § 4B1.2, *with* 21 U.S.C. § 841(a)(1); *see also* CGS § 21a-240(50) (defining "[s]ale" as "any form of delivery which includes barter, exchange or gift, or offer"); *Pascual*, 723 F.3d at 158–59.

[15] *Id.* at 265.

[16] *Webster*, 60 A.3d at 265.

12

sale in Connecticut is akin to the definition of that same word in New York Penal Law § 220.39, which requires "a bona fide offer," and which we have found is categorically conduct within the INA definition of drug trafficking.[17]  Further, contrary to Chery's argument, the acts of prescribing, compounding, giving, and administering are all punishable as a felony under the CSA.[18]  Accordingly, we hold that the acts proscribed by CGS § 21a-277(a) categorically match the acts proscribed by the analogous federal statute, 21 U.S.C. § 841(a)(1).

## 2. Substances Involved

We determine whether CGS § 21a-277(a) is divisible by looking to its text to decide whether the substance involved is an element of § 21a-277(a) or a means of committing the offense.[19]  The Supreme Court addressed this elements/means distinction in *Mathis*, describing

---

[17] *Pascual*, 723 F.3d at 159.

[18] *See* 21 U.S.C. § 841(a) (encompassing "manufacture," "dispens[ing]," and "possess[ion] with intent to . . . dispense").

[19] *See Harbin*, 860 F.3d at 64-65.

elements of a crime as what "the jury must find beyond a reasonable doubt to convict the defendant," and means as the "various factual ways of committing some component of the offense" that "a jury need not find (or a defendant admit)."[20]

Section 21a-277(a) criminalizes acts involving "any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance."  While it does not contain "a disjunctive list of offense[s],"[21] it does list hallucinogenic substances and narcotic substances as discrete alternatives for a violation.  Thus, unlike the indivisible New York statute at issue in *Harbin*, which criminalized the sale of a "controlled substance" generally,[22] the text of the statute here suggests that "hallucinogenic substance other than marijuana" and "narcotic substance" are distinct elements.  Indeed, to secure a

---

[20] 136 S. Ct. at 2248-49.

[21] *Beardsley*, 691 F.3d at 272.

[22] 860 F.3d at 65.

14

conviction under CGS § 21a-277(a), the jury must find that *either* a "hallucinogenic substance other than marijuana" *or* a "narcotic substance" was involved.[23] While Petitioners correctly note that when "statutory alternatives carry different punishments, then . . . they must be elements,"[24] they point to no authority requiring the converse. Accordingly, the text of CGS § 21a-277(a) and state case law suggest that the statute is divisible as to whether a defendant's conviction involved a hallucinogenic or a narcotic substance.

Petitioners' plea colloquies make clear that they were charged and pleaded guilty under the narcotic substance element. Further, Connecticut did not criminalize narcotics that were not included in the

---

[23] *See State v. Gayle*, 781 A.2d 383, 388 (Conn. App. Ct. 2001) ("[T]he state must prove beyond a reasonable doubt that the . . . substance sold was a narcotic" (citation, alterations, and internal quotation marks omitted)); *cf. State v. Ritrovato*, 858 A.2d 296, 303 (Conn. App. Ct. 2004) (in securing a conviction for the sale of a hallucinogenic substance under CGS § 21a-278(b), "the state had to prove beyond a reasonable doubt that the substance the defendant gave to [another] actually was a hallucinogenic substance"), *reversed in part on other grounds* 905 A.2d 1079 (Conn. 2006).

[24] *See Mathis*, 136 S. Ct. at 2256.

federal schedules at the time of petitioners' convictions.[25] Thus, the state statute under which Petitioners were convicted covers substances that were on the federal drug schedule, and can be used as a basis for finding an alien removable.[26] That Petitioners entered *Alford* pleas does not change the outcome because "the charge was narrowed to include only [narcotics]," meaning that Petitioners' "*Alford* plea[s] entered pursuant to such a charge . . . constitute[d] a [narcotic substance] offense."[27]

---

[25] *Compare* CGS § 21a-240(30) (2010), Conn. Agencies Regs. §§ 21a-243-7(a)-(b), 21a-243-8(a)(4) (2013), *with* 21 U.S.C. § 812 (2012), 21 C.F.R. §§ 1308.11(b)-(c) (Mar. 2014), 1308.12(b)(4) (2012). Petitioners accurately argue that Connecticut in 2014 regulated several substances not covered by federal schedules, including salvia divinorum, salvinorin A, trifluoromethylphenylpiperazine, and chorionic gonadotropin. *Compare* Conn. Agencies Regs. §§ 21a-243-7(c), 21a-243-9(g), *with* 21 C.F.R. §§ 1308.11(d) (Mar. 2014), 1308.13 (Jan. 2014). However, Petitioners do not argue that Connecticut designates these substances as narcotics. *See* Controlled Drug Schedules, Violations & Penalties, A Reference for the Law Enforcement Community, Drug Control Div., Conn. Dep't of Consumer Protection at 12, 39–40 (Apr. 2015), *available at* https://portal.ct.gov/-/media/DCP/drug_control/pdf/ControlledDrugSchedulesViolationsPenaltiespdf.pdf.

[26] *See Mellouli*, 575 U.S. at 813; *Collymore v. Lynch*, 828 F.3d 139, 145 (2d Cir. 2016); *see also Doe v. Sessions*, 886 F.3d 203, 209-10 (2d Cir. 2018).

[27] *Savage*, 542 F.3d at 964.

In sum, Petitioners' convictions under CGS § 21a-277(a) were controlled substance offenses and aggravated felony drug trafficking crimes, which barred Chery from asylum and withholding of removal for having been convicted of a particularly serious crime[28] and rendered Graham removable.

### B.   *Pereira* **Jurisdictional Argument**

Graham argues, relying on *Pereira v. Sessions*,[29] that the IJ lacked jurisdiction and the BIA should have reopened and terminated his removal proceedings.  The Supreme Court in *Pereira* held that the INA requires that an NTA include a hearing time and place to trigger the "stop-time rule,"[30] which cuts off a noncitizen's accrual of physical

---

[28] Chery's conviction under CGS § 21a-277(a) was per se a "particularly serious crime" that barred him from asylum and withholding of removal because it was categorically an aggravated felony drug trafficking crime as defined in 8 U.S.C. § 1101(a)(43)(B).  *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i), & 1231(b)(3)(B).

[29] 138 S. Ct. 2105 (2018).

[30] *Id.* at 2113-14.

presence for the purposes of qualifying for cancellation of removal.[31]

In *Banegas Gomez*, we held that *Pereira* applies narrowly to the stop-time rule and does not "void jurisdiction in cases in which an NTA omits a hearing time or place . . . so long as a notice of hearing specifying this information is later sent to the alien."[32] While Graham's NTA did not specify the date and time of his initial hearing, he does not dispute that he received notice of the hearing at which he appeared. Thus, Graham's argument is foreclosed by *Banegas Gomez*.

*Banegas Gomez* remains good law even after the Supreme Court's opinion in *Niz-Chavez*. The Supreme Court in *Niz-Chavez* held that a subsequent notice that provides the time and place of a hearing does not cure an NTA that is defective under *Pereira* because the cancellation of removal statute requires "*a* notice to appear," and thus does not permit the required information to be provided in multiple

---

[31] *See* 8 U.S.C. § 1229b(b), (d)(1).

[32] 922 F.3d at 110, 112 (citation omitted).

18

documents.[33]  As with *Pereira*, *Niz-Chavez* focused only on the stop-time rule in 8 U.S.C. § 1229b(d)(1) and did not address the effect of a defective NTA on an IJ's jurisdiction.[34]  In *Banegas Gomez*, we explained that the statutes and agency regulations governing the IJ's jurisdiction differ from the stop-time provision at issue in *Pereira* (and *Niz-Chavez*).[35]  For example, the statute and regulations related to jurisdiction require "written notice" but not, as for the stop-time rule, "a" singular written notice.[36]  And *Niz-Chavez* did not question

---

[33] 141 S. Ct. at 1480–86 (emphasis added).

[34] *Id.* at 1481.

[35] *See* 922 F.3d at 110–12.

[36] 8 U.S.C. § 1229(a)(1); *see also* 8 C.F.R. § 1003.14(a) (vesting jurisdiction with the IJ "when a charging document is filed" and requiring only that the charging document include "a certificate showing service"); 8 C.F.R. § 1003.18(b) ("In removal proceedings . . . , the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable. If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing.").

whether jurisdiction had attached, even though the petitioner had not received a single notice containing the hearing time and place.[37]

In sum, the jurisdictional holding of *Banegas Gomez* remains good law.[38]

## III. CONCLUSION

For the foregoing reasons, the petitions for review are **DENIED**.[39]

---

[37] *See generally* 141 S. Ct. 1474; *see also Banegas Gomez*, 922 F.3d at 111 (holding the same regarding *Pereira*).

[38] Because *Banegas Gomez* did not defer to BIA's interpretation of an ambiguous regulation, *see generally* 922 F.3d at 110-12, we reject Graham's argument that *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) was an intervening Supreme Court precedent.

[39] We acknowledge that Graham has pending an additional petition for review of the denial of a second motion to reopen, in which he argued that he was no longer removable because Connecticut had granted him a pardon. That petition will be addressed by another panel in the ordinary course.

20

18-1036; 18-1835 (L)
*Chery v. Garland; Graham v. Garland*


\*     \*     \*     \*     \*


A few years ago the Administrative Office of the United States Courts (AO) recommended that federal courts of appeals bring to the attention of Congress statutes that might benefit from congressional elimination of ambiguities.[a]  The opinion in this case illustrates the ambiguity in the phrase "aggravated felony," which the Immigration and Nationality Act ("INA") uses to describe prior crimes for which the INA imposes various adverse consequences, notably removal of an alien.[b]  The ambiguity in this phrase and the availability of a simple way to eliminate it prompt this panel to send our opinion (and the explanatory Appendix) to appropriate officials of Congress.

---

[a] *See* Memorandum from Judge Rodney W. Sippel, Chair, Judicial Conference Committee on the Judicial Branch, Chief Judge Robert A. Katzmann, Member, Judicial Conference Committee on the Judicial Branch, & James C. Duff, Director, Administrator Office of the United States Courts, to Judges and Clerks, United States Courts of Appeals (Aug. 12, 2015). On file with Clerk of Court, U.S. Court of Appeals for the Second Circuit.

[b] 8 U.S.C. § 1227(a)(2)(A)(iii).

The ambiguity has precipitated hundreds of lengthy appellate opinions, several from the Supreme Court, which can be avoided in the future if Congress gives the ambiguous statutory phrase a simple bright-line definition: an offense for which the sentence imposed exceeds a specified length. For example, an "aggravated felony" could be any offense for which the defendant was sentenced to serve more than one year in prison. The appropriate sentence length specified would be for Congress to determine.[c]

The ambiguity begins with the definition Congress has used and has been exacerbated by courts' use of what is called the "categorical approach." A bright-line definition based on sentence length would eliminate the need to apply the complicated "categorical approach"

---

[c] This simple bright-line definition could be used to eliminate ambiguities in other phrases Congress has used that are similar to "aggravated felony." *See, e.g.,* 18 U.S.C. § 924(e)(1) (enhancing some sentences after conviction for "violent felony"); *id*. § 3559(c)(1)(A) (enhancing some sentences after conviction for "serious violent felony"); 21 U.S.C. § 841(b)(1) (same); *id*. § 960(b)(1) (same); 18 U.S.C. § 931(a)(1) (establishing collateral consequences for a "crime of violence"); *id*. § 5032 (same).

because sentence length can be easily identified from a readily available record of a defendant's conviction.

Eliminating the ambiguity we have identified has nothing to do with making the removal of aliens less or more likely. The policy issues relevant to grounds for removal are entirely for Congress to decide. We suggest only that the needless ambiguity now existing in the INA's phrase "aggravated felony" be eliminated by a readily available bright-line definition using the length of sentences.

## Appendix[d]

### I. The Problem

The Immigration and Nationality Act ("INA") renders every alien who has committed an "aggravated felony" subject to removal[e] and ineligible for discretionary relief from removal,[f] and eleven

---

[d] This Appendix is the collaborative effort of Judges Jon O. Newman, José A. Cabranes, and Barrington D. Parker.

[e] 8 U.S.C. § 1227(a)(2)(A)(iii) (alien deportable for committing "aggravated felony" after admission).

[f] *Id.* § 1229b(a)(3), (b)(1)(C).

provisions of the INA attach other consequences and related administrative results for committing an "aggravated felony."[g] The INA has a complicated definition of "aggravated felony."[h] The

---

[g] *Id*. §§ 1101(f)(8) (no person can be regarded as a person of good moral character if convicted of an "aggravated felony"), 1158(b)(2)(B)(i) (defining "particularly serious crime," which exempts alien from eligibility for asylum, *see id*. § 1158(b)(2)(A)(ii), to include "aggravated felony"), 1182(a)(9)(A)(i) (removed alien convicted of "aggravated felony" is inadmissible), 1226(d)(1)(A) (directing Attorney General to make available to law enforcement officers investigative services to determine whether individuals arrested for "aggravated felonies" are aliens), 1226(d)(1)(B) (directing Attorney General to train officers with respect to arrest, conviction, and release of alien charged with an "aggravated felony"), 1226(d)(1)C (directing Attorney General to use computer resources to maintain record of aliens convicted of "aggravated felony"), 1228(a)(3)(A) (expediting removal proceedings for alien convicted of "aggravated felony"), 1326(b)(2) (punishing alien reentering after exclusion or removal subsequent to committing "aggravated felony"), 1231(*l*)(4)(A) (requiring Attorney General to give priority to the incarceration of criminal aliens who have committed "aggravated felonies"), 1327 (punishing anyone aiding entry of alien inadmissible after conviction of "aggravated felony"), 1368(b)(2)(A)(ii) (requiring Attorney General to report separately space needs for incarceration of criminal aliens who have committed "aggravated felonies").

[h] "The term 'aggravated felony' means--
   "(A) murder, rape, or sexual abuse of a minor;
   "(B) illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18);
   "(C) illicit trafficking in firearms or destructive devices (as defined in section 921 of Title 18) or in explosive materials (as defined in section 841(c) of that title);
   "(D) an offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000;

---

**"(E)** an offense described in--

**"(i)** section 842(h) or (i) of Title 18, or section 844(d), (e), (f), (g), (h), or (i) of that title (relating to explosive materials offenses);

**"(ii)** section 922(g)(1), (2), (3), (4), or (5), (j), (n), (o), (p), or (r) or 924(b) or (h) of Title 18 (relating to firearms offenses); or

**"(iii)** section 5861 of Title 26 (relating to firearms offenses);

**"(F)** a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year;

**"(G)** a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year;

**"(H)** an offense described in section 875, 876, 877, or 1202 of Title 18 (relating to the demand for or receipt of ransom);

**"(I)** an offense described in section 2251, 2251A, or 2252 of Title 18 (relating to child pornography);

**"(J)** an offense described in section 1962 of Title 18 (relating to racketeer influenced corrupt organizations), or an offense described in section 1084 (if it is a second or subsequent offense) or 1955 of that title (relating to gambling offenses), for which a sentence of one year imprisonment or more may be imposed;

**"(K)** an offense that--

**"(i)** relates to the owning, controlling, managing, or supervising of a prostitution business;

**"(ii)** is described in section 2421, 2422, or 2423 of Title 18 (relating to transportation for the purpose of prostitution) if committed for commercial advantage; or

**"(iii)** is described in any of sections 1581-1585 or 1588-1591 of Title 18 (relating to peonage, slavery, involuntary servitude, and trafficking in persons);

**"(L)** an offense described in--

**"(i)** section 793 (relating to gathering or transmitting national defense information), 798 (relating to disclosure of classified information), 2153 (relating to sabotage) or 2381 or 2382 (relating to treason) of Title 18;

**"(ii)** section 3121 of Title 50 (relating to protecting the identity of undercover intelligence agents); or

**"(iii)** section 3121 of Title 50 (relating to protecting the identity of undercover agents);

**"(M)** an offense that--

25

**"(i)** involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or

**"(ii)** is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000;

**"(N)** an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling), except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter[;]

**"(O)** an offense described in section 1325(a) or 1326 of this title committed by an alien who was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph;

**"(P)** an offense (i) which either is falsely making, forging, counterfeiting, mutilating, or altering a passport or instrument in violation of section 1543 of Title 18 or is described in section 1546(a) of such title (relating to document fraud) and (ii) for which the term of imprisonment is at least 12 months, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter;

**"(Q)** an offense relating to a failure to appear by a defendant for service of sentence if the underlying offense is punishable by imprisonment for a term of 5 years or more;

**"(R)** an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year;

**"(S)** an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year;

**"(T)** an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed; and

**"(U)** an attempt or conspiracy to commit an offense described in this paragraph."

8 U.S.C. § 1101(a)(43).

definition has 21 subsections,[i] four of which have multiple subsubsections.[j] They define "aggravated felony" in three different ways: ten subsections and two subsubsections refer to particular crimes,[k] six subsections and nine subsubsections refer to other statutory offenses,[l] and one subsubsection refers to another definition, "crime of violence (as defined in section 16 of Title 18 [with one exception]."[m]

When a person's prior conviction for an "aggravated felony" requires adverse immigration consequences, courts use the so-called "categorical approach" to determine whether the conviction was an

---

[i] *Id*. § 1101(a)(43)(A)-(U).

[j] *Id*. § 1101(a)(43)(E)(i)–(iii), (a)(43)(K)(i)–(iii), (a)(43)(L)(i)–(iii), (a)(43)(M)(i)–(ii).

[k] *Id*. § 1101(a)(43)(A), (B), (C), (G), (K)(i), (M)(i), (P), (Q), (R), (S), (T), (U).

[l] *Id*. § 1101(a)(43)(D), (E)(i), (E)(ii), (E)(iii), (H), (I), (J), (K)(ii), (K)(iii), (L)(i), (L)(ii), (L)(iii), (M)(ii), (N), (O).

[m] *Id*. § 1101(a)(43)(F).

"aggregated felony."[n] To use the categorical approach, a court "compare[s] the statutory elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime–*i.e.*, the offense as commonly understood"[o] and "does not consider the facts of an individual's crime as he actually committed it."[p] This prohibition is imposed because of the difficulty courts would encounter in retrieving trial transcripts of old cases and the even more difficult task of locating people with knowledge of the crime.

The Supreme Court has acknowledged that "the categorical method is not always easy to apply."[q] The Ninth Circuit has lamented, "[O]ver the past decade, perhaps no other area of the law has

---

[n] *See ante* 8–9.

[o] *Descamps v. United States*, 570 U.S. 254, 257 (2013).

[p] *Pereida v. Wilkinson*, 141 S. Ct. 754, 762 (2021). *See Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016) (same) (collecting cases).

[q] *Nijhawan v. Holder*, 557 U.S. 29, 35 (2009).

demanded more of our resources."[r]  Unless the INA is amended, this trend appears likely to endure.  Last year alone our Circuit issued at least five precedential opinions applying the categorical approach to different possible "aggravated felon[ies]" under the INA.[s]  As state and federal criminal statutes are modified, today's opinion is likely but the latest in an unending procession of INA cases applying the categorical approach.

## II. A Proposed Solution

To simplify administration of the INA by creating a bright-line test more straightforward than the categorical approach and to more reliably link adverse immigration consequences to serious crimes, we suggest that Congress modify subsection (a)(43) of Section 101 of the

---

[r] *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 917 (9th Cir. 2011) (en banc), *abrogated by Descamps*, 570 U.S. at 265–77; *see also* Sheldon A. Evans, *Categorical Nonuniformity*, 120 COLUM. L. REV. 1771, 1795–97 (2020) (describing various critiques of the complexity of the categorical approach).

[s] *See Rodriguez v. Barr*, 975 F.3d 188 (2d Cir. 2020), *cert. denied sub nom. Rodriguez v. Garland*, 141 S. Ct. 1705 (2021); *Santana v. Barr*, 975 F.3d 195 (2d Cir. 2020); *Jack v. Barr*, 966 F.3d 95, 96 (2d Cir. 2020); *Kondjoua v. Barr*, 961 F.3d 83 (2d Cir. 2020); *Quito v. Barr*, 948 F.3d 83 (2d Cir. 2020).

Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43), to read as follows:

> **"The term 'aggravated felony' means a felony for which the defendant is sentenced to serve more than [a fixed amount of time, such as one year] in prison. The term applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years. Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996."**

Congress has at least three times used a precise aspect of sentencing law as one component of definitions of prior offenses that enhance punishments. The definition of "violent felony," for purposes of enhancing punishment for firearms offenses, includes a requirement that the previous convictions are for offenses "punishable by imprisonment for a term exceeding one year."[t] The definition of

---

[t] 18 U.S.C. § 924(e)(2)(B).

30

"serious violent felony," for purposes of enhancing punishment for various narcotics offenses, includes a requirement that the defendant "served a term of imprisonment of more than 12 months."[u]  Finally, "aggravated felony" under the INA includes a "crime of violence" (defined elsewhere[v]) "for which the term of imprisonment [is] at least one year."[w]

These components of definitions of "violent felony" and "serious violent felony" help to remove some of the ambiguity from these phrases, but for two reasons they are not nearly as clear or useful as a definition that relates only to the length of the sentence imposed. First, while these definitions refer to sentence length, they also refer to particular crimes and statutory offenses, which require the complicated "categorical approach" for crimes that meet the

---

[u] 21 U.S.C. § 802(58).

[v] 18 U.S.C. § 16.

[w] 8 U.S.C. § 1101(a)(43)(F).

durational threshold.[x]  Second, use of some of the selected metrics—

maximum sentence and time actually served—might not accomplish

what Congress intended.  Maximum sentence is an imperfect proxy

for the seriousness of an offense.  For example, a sentence of 30 days

suggests that the sentencing judge did not think that the defendant's

misconduct was very serious, even where a crime is "punishable by

imprisonment"[y] for up to ten years.  The "term of imprisonment" that

the defendant "served"[z] (presumably prior to state parole) might be a

good indicator of the seriousness of the offense, but it is difficult for a

court to use years later because the term of imprisonment served

cannot be determined from the readily available documents such as

the indictment, the jury charge, and the judgment.

---

[x] *See* 18 U.S.C. § 924(e)(2)(B); 21 U.S.C. § 802(58); 8 U.S.C. § 1101(a)(43)(F).

[y] 18 U.S.C. § 924(e)(2)(B).

[z] 21 U.S.C. § 802(58).

Using the length of the sentence imposed would provide a readily available bright-line test, avoid use of the complicated categorical approach, and align adverse immigration consequences with crimes found by sentencing judges to be more serious.