14-1433-ag
Harbin v. Sessions

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Argued: December 13, 2016     Decided: June 21, 2017)

Docket No. 14-1433-ag

_____

KENNARD GARVIN HARBIN,

*Petitioner*,

v.

JEFFERSON B. SESSIONS, III,[1]

*Respondent*.[2]

_____

Before: CABRANES, POOLER, and PARKER, *Circuit Judges*.

Petitioner Kennard Garvin Harbin, a native and citizen of Grenada who

became a lawful permanent resident of the United States in 1978, seeks review of

a decision of the Board of Immigration Appeals ("BIA") affirming a decision of

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Jefferson B. Sessions, III is automatically substituted for former Attorney General Loretta E. Lynch as respondent.

[2] The Clerk of the Court is directed to amend the caption as shown above.

an immigration judge ("IJ") denying his applications for cancellation of removal, asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). On appeal, Harbin argues that the agency erred when it (1) barred Harbin's applications for cancellation and asylum on the grounds that his conviction under N.Y. Penal Law § 220.31 constituted a drug-trafficking aggravated felony, and when it (2) upheld the IJ's denial of Harbin's applications for withholding and CAT relief by misconstruing Harbin's particular social group, ignoring relevant evidence, and denying his due process rights.

We hold that N.Y. Penal Law § 220.31 defines a single crime and is therefore an "indivisible" statute. Accordingly, the agency should have applied the so-called "categorical approach," which looks to the statutory definition of the offense of conviction, rather than the particulars of an individual's behavior, to determine whether a prior conviction constitutes an aggravated felony. *See Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015). Now applying the categorical approach, we conclude that Harbin's conviction under N.Y. Penal Law § 220.31 did not constitute a commission of an aggravated felony. Harbin's § 220.31 conviction therefore did not bar him from seeking cancellation of removal and asylum. We dismiss the remainder of Harbin's petition for want of jurisdiction.

Accordingly, the petition for review is **GRANTED** in part. The agency's rulings as to Harbin's eligibility for cancellation of removal and asylum are **VACATED**, and this matter is **REMANDED** to the BIA for reconsideration of those issues in a manner consistent with this opinion. The petition is **DISMISSED** for want of jurisdiction as to Harbin's applications for withholding of removal and CAT relief. Having completed our review, any stay of removal that the Court previously granted in this petition is **VACATED**.

———————

Appearing for Petitioner: DOROTHY J. SPENNER, Sidley Austin LLP (Kevin Kim, Sonia Marquez, Sidley Austin LLP; Seymour W. James, Jr., Attorney-in-Chief, Jojo Annobil, Attorney-in-Charge, Immigration Law Unit, Maria Navarro, Acting Attorney-in-Charge, Immigration Law Unit, Ward J. Oliver, Supervising Attorney, Immigration Law Unit, Amy Meselson, Of Counsel, The Legal Aid Society, *on the brief*), New York, N.Y.

Appearing for Respondent: LINDSAY CORLISS, Civil Division, Office of Immigration Litigation (Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, John S. Hogan, Assistant Director, Daniel E. Goldman, Senior Litigation Counsel, Mona Maria Yousif, Attorney, Office of Immigration Litigation, *on the brief*), U.S. Department of Justice, Washington, D.C.

———————

POOLER, *Circuit Judge*:

Petitioner Kennard Garvin Harbin, a native and citizen of Grenada who became a lawful permanent resident of the United States in 1978, seeks review of an April 24, 2014 decision of the Board of Immigration Appeals ("BIA") affirming an October 31, 2013 decision of an immigration judge ("IJ") denying Harbin's applications for cancellation of removal ("cancellation"), asylum, withholding of removal ("withholding"), and relief under the Convention Against Torture ("CAT"), Art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85; 8 C.F.R. § 1208.17(a) (2017).[3] *In re Kennard Garvin Harbin*, No. A035 168 080 (B.I.A. Apr. 24, 2014), *aff'g* No. A035 168 080 (Immig. Ct. N.Y. City Oct. 31, 2013). On appeal, Harbin argues that the agency erred when it (1) barred Harbin's

---

[3] When a non-citizen is found to be deportable, as Harbin was, he or she may ask the Attorney General for certain forms of discretionary relief from removal. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1682 (2013). These grounds include asylum, when the non-citizen has a well-founded fear of persecution in his home country, 8 U.S.C. § 1158, and cancellation of removal, when, among other things, the noncitizen has been lawfully present in the United States for a number of years, *id.* § 1229b. *See Moncrieffe*, 133 S. Ct. at 1682. A noncitizen who fears persecution may also seek withholding of removal, 8 U.S.C. § 1231(b)(3)(A), and deferral of removal under CAT, 8 C.F.R. § 1208.17(a). *See Moncrieffe*, 133 S. Ct. at 1683 n.1. Withholding and CAT relief "require the noncitizen to show a greater likelihood of persecution or torture at home than is necessary for asylum, but the Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility." *Id.*

4

applications for cancellation and asylum on the grounds that his conviction under N.Y. Penal Law ("NYPL") § 220.31 constituted a drug-trafficking aggravated felony, and when it (2) upheld the IJ's denial of Harbin's applications for withholding and CAT relief by misconstruing Harbin's particular social group, ignoring relevant evidence, and violating his right to due process.

We hold that NYPL § 220.31 defines a single crime and is therefore an "indivisible" statute. Accordingly, the agency should have applied the so-called "categorical approach," which looks to the statutory definition of the offense of conviction, rather than the particulars of an individual's behavior, to determine whether a prior conviction constitutes an aggravated felony. *See Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015). Now applying the categorical approach, we conclude that Harbin's conviction under the NYPL § 220.31 did not constitute a commission of an aggravated felony. Harbin's § 220.31 conviction therefore did not bar him from seeking cancellation of removal and asylum.

We lack jurisdiction to consider the remainder of Harbin's petition. Accordingly, we GRANT the petition in part; we VACATE the agency's rulings as to Harbin's ineligibility for asylum and cancellation of removal; and we REMAND this matter for proceedings consistent with this opinion. The petition

is DISMISSED for want of jurisdiction as to Harbin's applications for withholding of removal and CAT relief. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED.

## BACKGROUND

Harbin, a 54-year-old native and citizen of Grenada, arrived in the United States in 1978 as a lawful permanent resident. He has accumulated a number of criminal convictions, including a 1991 felony conviction for criminal sale of a controlled substance in the fifth degree under NYPL § 220.31. According to Harbin's certificate of disposition from his § 220.31 conviction, the controlled substance in question was cocaine.

In January of 2012, Harbin was taken into custody after a conviction for disorderly conduct. Shortly thereafter, he was charged as removable for having been convicted of multiple crimes involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii).[4] During 2013, in proceedings before an IJ, he applied for cancellation of removal, asylum, withholding of removal, and CAT protection.

---

[4] Harbin was initially ordered removed by the IJ on May 23, 2012, and the BIA denied his appeal on September 21, 2012. On November 9, 2012, however, the New York City Criminal Court for Kings County vacated Harbin's 1984 conviction for unlawful possession of marijuana under NYPL § 221.05. Harbin accordingly filed a motion to reopen, on the grounds that his marijuana

6

In his 2013 submissions to the IJ, Harbin claimed to be a member of a particular social group—one made up of mentally-ill criminal deportees to Grenada with no support system in the country. At the merits hearing before the IJ in 2013, he testified that he suffers from schizophrenia and bipolar disorder. He further asserted that he feared returning to Grenada because he could become homeless and imprisoned, he had no family or money there, and he would have no access to required medications. In support of his petition, Harbin submitted documentary evidence about Grenada's inadequate mental health services and an expert report on his mental illness. Harbin's brother and a clinical psychologist also testified on his behalf. On October 31, 2013, the IJ issued an oral decision on the record denying relief.

First, the IJ ruled that Harbin's NYPL § 220.31 conviction of 1991 was an aggravated felony that barred him from receiving cancellation of removal or asylum. *See* 8 U.S.C. § 1229b(a)(3) (cancellation); *id.* § 1158(b)(2)(A)(ii) (asylum).

Second, regarding Harbin's claims for withholding of removal and relief under CAT, the IJ acknowledged that "the outlook" for Harbin "if he is not able

conviction no longer disqualified him from applying for cancellation of removal. The BIA granted the motion on December 12, 2012 and remanded his case to the IJ.

7

to continue getting mental health services is not one that is filled with a great deal of hope." Certified Administrative Record ("CAR") 109. She nevertheless ruled that Harbin failed to submit evidence of "any deliberate intention to harm someone in [his] situation by any group within Grenada."[5] CAR 110. On this basis, the IJ denied withholding of removal and CAT relief.

On April 24, 2014, the BIA dismissed Harbin's appeal. It agreed that Harbin's NYPL § 220.31 conviction of 1991 was an aggravated felony and upheld the IJ's denial of asylum and cancellation of removal on that ground. It further upheld the IJ's denial of withholding of removal and CAT relief on the ground that Harbin failed to demonstrate that it was more likely than not that he would be persecuted or tortured in Grenada. Harbin now petitions for review of the BIA's ruling.

**DISCUSSION**

Under the circumstances of this case, we should consider both the IJ's and the BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't Homeland*

---

[5] The IJ did not bar Withholding or CAT relief on the basis of Harbin's § 220.31 conviction. Rather, the IJ found that the § 220.31 conviction was not a "particularly serious crime" due to Harbin's peripheral role and the small quantity of drugs involved. CAR 101, 104. The IJ also found evidence of limited mental services in Grenada as well as societal prejudices against those with mental disabilities.

8

*Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). "We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165 (2d Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)). For a final order of removal against an alien who is removable for having certain criminal convictions, our jurisdiction is limited to review of constitutional claims or questions of law. 8 U.S.C. §§ 1252(a)(2)(C), (2)(D). "Our consideration of questions of law and the application of law to undisputed facts is *de novo*." *Vasconcelos v. Lynch*, 841 F.3d 114, 117 (2d Cir. 2016).

On appeal to this Court, Harbin makes two main arguments. First, he argues that NYPL § 220.31 is an indivisible statute defining one crime, and thus requires the application of the so-called categorical approach to determine whether a § 220.31 conviction is an aggravated felony under the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1101 *et seq*. Since New York's schedule of controlled substances is broader than the federal schedules, Harbin argues that,

9

under the categorical approach, NYPL § 220.31 is not an aggravated felony.[6]

Second, Harbin contends that he is entitled to a new hearing on his application

for withholding of removal and CAT protection because the BIA improperly

bifurcated his social group into two categories,[7] ignored evidence concerning

Grenada's ability to treat mental illness, and violated his right to due process. We

address each argument in turn.

**I.      NYPL § 220.31 Conviction**

A petitioner convicted of an "aggravated felony" is ineligible for

cancellation of removal, 8 U.S.C. § 1229b(a)(3), and asylum, *id.* § 1158(b)(2)(A)(ii),

(B)(i). Under INA, the list of "aggravated felon[ies]" includes a drug-trafficking

offense involving a "controlled substance" listed on controlled substance

schedules of the Controlled Substances Act ("CSA"), 21 U.S.C. § 802. *See* 8 U.S.C.

---

[6] As discussed below, under the categorical approach, an adjudicator must "presume that the conviction rested upon nothing more than the least of the acts criminalized" under the state statute. *Mellouli*, 135 S. Ct. at 1986 (internal quotation marks omitted).

[7] The two improperly bifurcated categories alleged by Harbin, as discussed in greater detail below, are "persons with mental illness with no support system" and "deportees with mental illness." Petitioner's Brief at 30. Harbin, rather, argues that the IJ should have considered Harbin's social group as a whole: mentally-ill criminal deportees to Grenada with no support system in the country.

§ 1101(a)(43)(B). Harbin argues that his conviction for fifth-degree criminal sale of a controlled substance under NYPL § 220.31 is not an aggravated felony, and he therefore remains eligible for cancellation of removal and asylum.

**A. Divisibility of NYPL § 220.31**

To determine whether a NYPL § 220.31 conviction is an aggravated felony, we must first ask whether NYPL § 220.31 is a divisible or an indivisible statute. A divisible statute is one that lists elements in the alternative, and, in doing so, creates a separate crime associated with each alternative element. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). On the other hand, an indivisible statute creates only a single crime, but it may "spell[] out various factual ways," or "means," "of committing some component of the offense." *Id.* The jury need not agree on the particular means by which the defendant committed the crime to convict a defendant under such a statute. *Id*. The Supreme Court's opinion in *Mathis v. United States* provided an example of a statute with alternative means of commission:

> [S]uppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime . . . a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors concluded that the

11

defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a "deadly weapon."

*Id.* (internal citations and quotation marks omitted). In sum, a statute creating alternative elements, and thus separate crimes, is divisible, but a statute providing alternative means of committing a single crime is indivisible.

If a statute is indivisible, we apply the categorical approach to determine whether it is an aggravated felony. The categorical approach is an element-based analysis, and does not take into account the particular facts underlying a conviction. *Moncrieffe*, 133 S. Ct. at 1684. Instead, we look to "whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Id.* (internal quotation marks omitted). A state offense categorically matches with a generic federal definition of a corresponding aggravated felony "only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." *Id.* (internal quotation marks, ellipsis, and alterations omitted). In conducting this analysis, "the adjudicator must presume that the conviction rested upon nothing more than the least of the acts criminalized" under the state statute. *Mellouli*, 135 S. Ct. at 1986 (internal quotation marks omitted).

For divisible statutes, we instead apply the modified categorical approach. That approach permits consideration of certain materials that reveal which of a statute's separate offenses served as the basis for the defendant's conviction. *See Descamps v. United States*, 133 S. Ct. 2276, 2283–84 (2013).

**1. Text of the Statute**

To determine whether NYPL § 220.31 is divisible or indivisible, we begin with the statute's text. The entirety of NYPL § 220.31 reads as follows:

> A person is guilty of criminal sale of a controlled substance in the fifth degree when he knowingly and unlawfully sells a controlled substance. Criminal sale of a controlled substance in the fifth degree is a class D felony.

The face of the statute thus gives only one set of four elements: the defendant must (1) knowingly and (2) unlawfully (3) sell (4) a controlled substance. The statutory scheme goes on to define a "controlled substance" as

> any substance listed in schedule I, II, III, IV or V of section thirty-three hundred six of the public health law other than marihuana, but including concentrated cannabis as defined in paragraph (a) of subdivision four of section thirty-three hundred two of such law.

NYPL § 220.00(5).

NYPL § 220.31's text suggests that it creates only a single crime, but provides a number of different factual means by which that crime may be committed. The statute criminalizes sale of a "controlled substance." Although it

13

incorporates state schedules to clarify which substances are "controlled," it provides no indication that the sale of each substance is a distinct offense. Moreover, the text does not suggest that a jury must agree on the particular substance sold. If some jurors believed that a defendant had sold cocaine, and others believed that he had sold heroin, they could still agree that he had sold "a controlled substance," and issue a guilty verdict. In this way, the statute is similar to the hypothetical statute discussed in *Mathis*, which allowed a jury to convict "even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a 'deadly weapon.'"[8] 136 S. Ct. at 2249.

---

[8] Other courts have applied the categorical approach in similar, albeit not identical, circumstances. In *Borrome v. Attorney General of the United States*, the Third Circuit held that a conviction under federal statutes prohibiting the unlicensed distribution of any prescription drug created only a single crime, not a separate crime for each drug. 687 F.3d 150, 157–59 (3d Cir. 2012). The statute in that case referred to a definition of prescription drugs that included substances on a list regulated by the FDA, as well as those a jury would consider unsafe for use without supervision by licensed practitioners. *Id.* at 157. In *Mellouli*, the Supreme Court used the categorical approach to analyze a Kansas statute prohibiting the possession of drug paraphernalia to "store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body," and which defined "controlled substance" by reference to Kansas drug schedules. 135 S. Ct. at 1983–84 (internal quotation marks omitted). Admittedly, *Mellouli* is not entirely dispositive on this point, as the government there did not argue that the statute was divisible. *Id.* at 1986 n.4. But the fact that

Our reading of the plain text of the statute is consistent with the law's penalty provisions, which prescribe the same narrow range of penalties for violations of NYPL § 220.31 no matter which controlled substance a defendant has sold. *See* NYPL § 220.31 ("Criminal sale of a controlled substance in the fifth degree is a class D felony."); NYPL § 70.70(2)(a)(iii) (providing sentence for class D felonies of one to two and one-half years); (3)(b)(iii) (providing sentence for class D felonies of one and one-half years to four years, where defendant is a second felony drug offender); (4)(b)(iii) (providing sentence of two and one-half years to four and one-half years, where defendant is a second felony drug offender previously convicted of a violent felony). As the Supreme Court observed in *Mathis*, "if statutory alternatives carry different punishments . . . they must be elements." 136 S. Ct. at 2256. The fact that NYPL § 220.31 carries the same penalties for each violation is therefore in line with our reading of § 220.31: that each controlled substance is a mere "means" of violating the statute, not a separate alternative element.

---

the Court was willing to apply the categorical approach to a similar statute suggests that doing so is not inappropriate.

The government argues that NYPL § 220.31 is a divisible statute because, by incorporating controlled substances by reference to New York's Public Health Law, § 220.31 "list[s] potential offense elements in the alternative." *Descamps*, 133 S. Ct. at 2283. For its position, the government relies primarily on *Coronado v. Holder*, 759 F.3d 977, 984–85 (9th Cir. 2014) (finding a California drug statute criminalizing the possession of controlled substances, identified by reference to statutory drug schedules, to be divisible) and *United States v. Gomez-Alvarez*, 781 F.3d 787, 792 (5th Cir. 2015) (finding that a California statute that criminalized "[p]ossession or purchase for sale of designated controlled substances" listed in separate schedules was divisible). Both *Coronado* and *Gomez-Alvarez*, however, arose under California law, and are therefore inapposite to our analysis of New York law. As discussed below, New York law supports our conclusion that § 220.31 is indivisible.

## 2. State Court Decisions

The government argues that New York's state court decisions show § 220.31 to be divisible, but its cited authorities do not support that conclusion. The government first cites cases stating that, when a defendant is charged with selling controlled substances, prosecutors must describe the particular

16

substances in question so that defendants (1) are on notice of charges, and (2) are not at risk of being later retried for the same incident. *See People v. Kalin*, 12 N.Y.3d 225, 230–32 (2009); *People v. Crisofulli*, 398 N.Y.S.2d 120, 121 (N.Y. Crim. Ct. 1986). But the values of fair notice and avoidance of double jeopardy often demand that the government specify accusations in ways unrelated to a crime's elements. For example, when bringing charges for crimes with clear victims, the government often must tell a defendant the identity of an alleged crime's victim, or at least the time and place where the crime allegedly happened. *See People v. Sanchez*, 84 N.Y.2d 440, 446 (1994) ("Although there is no per se rule that requires an indictment to name the victim for each count alleged, the indictment and bill of particulars must provide sufficient alternative information identifying the charged crime to satisfy statutory and constitutional requirements. Here, . . . [the] indictment . . . not only left victims unnamed but provided no definiteness as to the dates, times, or places of the charged criminal activity." (citations omitted)). The government may thus be required to say not simply that the defendant committed murder, but (for example) that the defendant murdered John Smith. That does not mean, however, that "murder of John Smith" has a distinct "John Smith" element, or that it is a separate crime from the murder of anyone else.

The government also cites cases stating that the "prosecutor must put forth 'reasonable assurances of the identity' of the specific controlled substance charged." Respondent's Supplemental Br. at 5 (quoting *People v. Douglas*, 807 N.Y.S.2d 393, 394 (2d Dep't 2005)). Those cases relate to establishment of the chain of custody for evidentiary purposes. *See Douglas*, 807 N.Y.S.2d at 394 ("The People failed to adduce testimony providing reasonable assurances of the identity and the unchanged condition of the cocaine the defendant allegedly possessed. Consequently, that evidence was inadmissible . . . ." (citations omitted)). The chain of custody is not relevant to the elements of the charged crime. A chain would have to be established for the introduction of drug evidence regardless of its purpose in the trial or the underlying crime. To the extent that these cases consider dismissing charges because a drug was not properly identified, they merely demonstrate that the government must show the defendant to have sold some substance that appears in the schedules. *See People v. Montoya*, 664 N.Y.S.2d 106, 107 (2d Dep't 1997) ("Consequently, the substance was inadmissible, rendering the evidence against the defendant legally insufficient to establish that he sold a controlled substance."). The cases do not show that each substance creates a separate crime.

Indeed, it appears that rulings from New York appellate courts favor Harbin's position. Several cases in the Appellate Division have considered NYPL § 220.16(1), a statute comparable to NYPL § 220.31 except that it deals with possession instead of sale—and deals with the possession of narcotics in particular.[9] The statute reads, in relevant part, as follows:

> A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it . . . .

NYPL § 220.16(1). Several opinions state that different narcotic drugs do not create separate crimes under this statute, and that jurors need not agree as to the particular narcotic drug in question. In *People v. Miller*, the First Department flatly wrote that "[d]efendant should not have been convicted of two possession counts based on his possession of single bag containing both cocaine and heroin." 789 N.Y.S.2d 423 (1st Dep't 2005). And in *People v. Martin*, the First Department wrote:

> The People concede on appeal that one of the two counts charging the defendant with possession of narcotic drugs must be dismissed. Penal Law § 220.16(1) does not distinguish between the types of narcotics possessed, but treats all drugs classified as narcotics interchangeably. Thus, there is no basis for multiple counts under

---

[9] Although both parties cite cases interpreting NYPL § 220.31, those opinions appear inconclusive and unhelpful for present purposes.

this section based on the fact that the narcotics happen to be of different types.

545 N.Y.S.2d 287, 288 (1st Dep't 1989). A conclusion that NYPL § 220.16(1) "treats all drugs classified as narcotics interchangeably" suggests that NYPL § 220.31 would take the same approach to the term "controlled substances," given the similarity of the statutes' language and structure.

### 3. State Jury Instructions

The government also contends that New York's Pattern Jury Instructions show NYPL § 220.31 to be divisible. An appeal to pattern jury instructions is unwarranted here. The Supreme Court's opinion in *Mathis* strongly suggests that we should consult jury instructions only when we are otherwise uncertain regarding the state law's meaning, and there is no such uncertainty as to NYPL § 220.31. *See Mathis*, 136 S. Ct. at 2256 ("[I]f state law *fails to provide clear answers*, federal judges have another place to look: the record of a prior conviction itself." (emphasis added)). Even when we do consider jury instructions, we consider them to the extent they appear in the "record of [the] prior conviction." *Id.* In this case, the government has not pointed to jury instructions actually used in Harbin's case, likely because he pled guilty.

20

Regardless, our review of the pattern jury instructions does not demonstrate that courts treat the sale of each drug under NYPL § 220.31 as a separate crime. The relevant part of the instructions reads as follows:

> In order for you to find the defendant guilty of this crime, the People are required to prove, from all the evidence in the case, beyond a reasonable doubt, both of the following two elements:
>
> 1. That on or about (date), in the county of (county), the defendant, (defendant's name), sold (specify); and
>
> 2. That the defendant did so knowingly and unlawfully.

N.Y. Pattern Jury Instructions 220.31 (emphasis added). Although the instructions include a blank with the word "specify" in it, allowing a judge to name the substances at issue in the case, the instructions do not say it is impermissible to identify more than one substance. No rule of law or language requires that the term "specify" cover only one object.

If a New York state judge may specify more than one drug in the pattern instructions for NYPL § 220.31, that judge could ask jurors to find whether or not "the defendant, Smith, sold cocaine or heroin," and, in doing so, comply with the language of the instructions. And if the judge may allow the jurors a choice between different substances, the statute does not create separate crimes—it creates separate means of committing the same crime. The pattern jury

21

instructions are thus consistent with the plain text of NYPL § 220.31, which allows conviction based on a defendant's sale of more than one substance, or when jurors do not agree as to which controlled substance the defendant sold.

**B. Categorical Approach**

Because NYPL § 220.31 is indivisible, we apply the categorical approach to determine whether it is an aggravated felony. As noted previously, "the [categorical] approach looks to the statutory definition of the offense of conviction, not to the particulars of an [individual's] behavior." *Mellouli*, 135 S. Ct. at 1986. "An alien's actual conduct is irrelevant to the inquiry, as the adjudicator must 'presume that the conviction rested upon nothing more than the least of the acts criminalized' under the state statute." *Id.* (quoting *Moncrieffe*, 133 S. Ct. at 1684–85).

To be a drug-trafficking aggravated felony under the INA based on "the categorical approach, a state drug offense must . . . 'necessarily' proscribe conduct that is an offense under the CSA."[10] *Moncrieffe*, 133 S. Ct. at 1685. In this case, however, N.Y. Pub. Health Law § 3306, which supplies the drug schedules

---

[10] The CSA must also prescribe felony punishment for the conduct at issue. *Moncrieffe*, 133 S. Ct. at 1685.

that permit conviction under NYPL § 220.31, includes chorionic gonadotropin as a controlled substance. Chorionic gonadotropin is not a controlled substance under the CSA. *Compare* N.Y. Pub. Health Law § 3306 *with* 21 U.S.C. § 802.

Because NYPL § 220.31 can punish conduct that is not criminal under the CSA, it is not an aggravated felony. And, since § 220.31 is not an aggravated felony, Harbin's conviction under that statute does not bar him from requesting asylum or cancellation of removal. Because the BIA ruled that Harbin was ineligible for both of these forms of relief based on his conviction under § 220.31, this matter will be remanded to the agency for reconsideration of Harbin's eligibility for asylum and cancellation of removal.

## II. Additional Arguments

Harbin raises three challenges to the agency's denial of withholding and CAT relief. As noted above, for a final order of removal against an alien who is removable for having certain criminal convictions, we have jurisdiction to review only constitutional claims or questions of law. 8 U.S.C. §§ 1252(a)(2)(C), (2)(D).

Harbin argues that the agency improperly bifurcated his particular social group into two categories, and thus failed to consider all of the challenges associated with membership in Harbin's claimed social group as a whole.

Specifically, Harbin suggests that the BIA considered the status of "persons with mental illness with no support system" separately from the status of "deportees with mental illness," and failed to consider holistically the plight of a deportee with mental illnesses who has no support system. Petitioner's Brief at 30. Harbin also argues that the BIA ignored country conditions evidence establishing Grenada's inability to treat the mentally ill, and ignored evidence showing prejudice against the mentally ill and deportees in Grenada.

Despite Harbin's claims to the contrary, these arguments are merely quarrels with the agency's evaluation of the likelihood of harm arising from his status as a mentally-ill criminal deportee. Since likelihood of future harm is a finding of fact, we lack jurisdiction to consider these arguments. *Hui Lin Huang v. Holder*, 677 F.3d 130, 134–35 (2d Cir. 2012).

Finally, Harbin argues that the IJ's errors amount to a due process violation by depriving him of individualized consideration. However, because Harbin's due process claim depends on his other arguments, all of which are unreviewable factual challenges, his due process claim is unreviewable as well.

**CONCLUSION**

We have reviewed the other arguments raised by Harbin and the government, and find them to be without merit. For the reasons stated above, the petition for review is **GRANTED** in part**.** The agency's ruling is **VACATED** as to Harbin's ineligibility for asylum and cancellation of removal, and this matter is **REMANDED** for proceedings consistent with this opinion. The petition is **DISMISSED** for want of jurisdiction as to Harbin's applications for withholding of removal and CAT relief. Having completed our review, any stay of removal that the Court previously granted in this petition is **VACATED**.