21-6265(L)
*Stankiewicz v. Garland*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2022

(Argued: February 21, 2023     Decided: May 31, 2024)

Docket Nos. 21-6265(L), 22-6121(Con)

ALEKSANDRA MALGORZATA STANKIEWICZ,

*Petitioner,*

–v.–

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

Before:     WALKER, LYNCH, and ROBINSON, *Circuit Judges.*

In this case, we must decide whether N.J. Stat. § 2C:35-7, which criminalizes distributing a controlled substance on or near school property, is an "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43)(B).

Petitioner Aleksandra Malgorzata Stankiewicz was convicted in 2003 of violating § 2C:35-7.  In removal proceedings initiated in 2018, the immigration judge (IJ) and the Board of Immigration Appeals (BIA) concluded that Stankiewicz's § 2C:35-7 conviction was an aggravated felony

that made her both removable and ineligible to apply for cancellation of removal under 8 U.S.C. § 1229b(a). Stankiewicz now seeks review of that conclusion.

Applying the "categorical approach," we hold that Stankiewicz's § 2C:35-7 conviction is not an "aggravated felony" under § 1101(a)(43)(B). In particular, we conclude that a state controlled substances conviction is an aggravated felony if it categorically matches any offense in the federal Controlled Substances Act and is a felony subject to a sentence exceeding one year. Here, neither of the parties' proposed federal analogs—21 U.S.C. § 860, the federal school zone statute, and 21 U.S.C. § 841, the federal controlled substance distribution statute—categorically matches § 2C:35-7. And, § 2C:35-7 is not divisible. We therefore **GRANT** Stankiewicz's petition for review, **VACATE** the agency's ruling, and **REMAND** this case to the BIA for further proceedings consistent with this opinion.

———————

JOSHUA E. BARDAVID, Bardavid Law, P.C., New York, NY (Thomas V. Massucci, Law Office of Thomas V. Massucci, New York, NY, *on the brief*), *for Petitioner.*

ALEXANDER J. LUTZ, Trial Attorney, Office of Immigration Litigation (Craig A. Newell, Jr. Senior Litigation Counsel, *on the brief*), *for* Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC, *for Respondent*.

———————

ROBINSON, *Circuit Judge*:

Under the Immigration and Nationality Act (INA), immigration officials can remove a noncitizen who has been "convicted of an aggravated felony at any time after admission" to the United States. 8 U.S.C. § 1227(a)(2)(A)(iii). Usually, an

2

otherwise-removable permanent resident who has lived in the United States for a certain amount of time can apply to the Attorney General for "[c]ancellation of removal." 8 U.S.C. § 1229b(a). However, a permanent resident who has been convicted of an "aggravated felony" is not eligible for cancellation of removal. *Id.* § 1229b(a)(3). Therefore, a permanent resident who has been convicted of an aggravated felony is both removable *and* statutorily ineligible to apply for cancellation of removal.

The issue in this case is whether Petitioner Aleksandra Malgorzata Stankiewicz's conviction for distributing a controlled substance on or near school property, in violation of N.J. Stat. § 2C:35-7, is an aggravated felony that makes her ineligible for cancellation of removal. We hold that it is not. The "categorical approach" requires us to compare § 2C:35-7 to any federal controlled substance offense that is a felony subject to a prison sentence greater than one year. We conclude that neither of the parties' proposed federal analogs categorically matches § 2C:35-7, which is not divisible.

Accordingly, we **GRANT** Stankiewicz's petition for review, **VACATE** the agency's ruling, and **REMAND** this case to the Board of Immigration Appeals (BIA) for further proceedings consistent with this opinion.

# BACKGROUND

Stankiewicz was born in Poland in 1980. She was admitted to lawful permanent residence in the United States in 1992, when she was 11.

In April 2003, Stankiewicz was convicted in New Jersey of distributing a controlled substance on or near school property, in violation of N.J. Stat. § 2C:35-7. She was convicted on the basis of a guilty plea to a third-degree offense, and the substance involved was cocaine.

Fifteen years later, in May 2018, the Department of Homeland Security (DHS) initiated removal proceedings against Stankiewicz. According to DHS, Stankiewicz's April 2003 conviction made her removable for two independent reasons: (1) the conviction relates to a federally controlled substance, thus rendering her removable under 8 U.S.C. § 1227(a)(2)(B)(i); and (2) the conviction constitutes an aggravated felony that followed her admission to the United States, thereby making her removable under 8 U.S.C. § 1227(a)(2)(A)(iii).

Represented by counsel before an Immigration Court in New York, Stankiewicz admitted all of DHS's factual allegations and conceded removability under the first charge. She initially denied removability under the second charge because she did not believe her New Jersey conviction constituted an aggravated felony. However, she later conceded that her New Jersey conviction was an

4

aggravated felony, so she also was removable under the second charge. Based on that concession, Stankiewicz became both removable and statutorily ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of any aggravated felony.").

After conceding both removability charges, Stankiewicz requested a continuance. She argued the continuance was warranted because it would allow her (1) to seek post-conviction relief in state court and (2) to wait for a then-pending Third Circuit decision that might overturn *Matter of Rosa*, 27 I. & N. Dec. 228 (BIA 2018), an Interim Decision in which the BIA held that § 2C:35-7 is an aggravated felony. The Immigration Judge (IJ) concluded that neither of Stankiewicz's arguments constituted good cause for a continuance, denied her request, and ordered her removal to Poland. Stankiewicz appealed to the BIA.

While her appeal was pending before the BIA, the Third Circuit issued an opinion vacating and remanding *Matter of Rosa*. The Third Circuit concluded that a conviction under § 2C:35-7 is an aggravated felony only if it categorically matches the "most similar federal analog," namely, 21 U.S.C. § 860, the federal school zone statute. *See Rosa v. Attorney General United States*, 950 F.3d 67, 76, 80–81 (3d Cir. 2020). Earlier, the BIA had concluded in *Matter of Rosa* that a § 2C:35-7

5

conviction is an aggravated felony because it is a categorical match with 21 U.S.C. § 841, the federal controlled substance distribution statute. 27 I. & N. at 232–34.

After the Third Circuit issued *Rosa*, Stankiewicz moved for the BIA to remand proceedings back to the Immigration Court so she could apply for cancellation of removal. In Stankiewicz's view, because *Matter of Rosa* had been vacated by the Third Circuit, the BIA's decision no longer had any legal force.

Initially, the BIA dismissed Stankiewicz's appeal without considering her motion to remand. Stankiewicz filed in this Court a petition for review of that decision. In the meantime, she moved before the BIA for reconsideration. The BIA granted reconsideration, again denied Stankiewicz's motion to remand, and dismissed her appeal because the Third Circuit's decision in *Rosa* is not binding within the Second Circuit. The BIA thus stood by its reasoning in *Matter of Rosa*. Stankiewicz also timely petitioned this Court for review of that decision.[1]

---

[1] At Stankiewicz's request, this Court held in abeyance her petition for review of the BIA's initial refusal to remand. We then consolidated her petition for review of the BIA's subsequent final decision with her initial petition. This panel deferred resolution of this appeal pending a different panel's resolution of an appeal testing whether conviction under a closely analogous New Jersey statute was an aggravated felony. *See Smith v. Garland*, No. 21-6278-ag, 2023 WL 7147426 (2d Cir. Oct. 31, 2023) (summary order).

The parties agree that the BIA's first decision in this case was vacated when the BIA granted Stankiewicz's motion for reconsideration. Petitioner's Br. 2 n.1; Respondent's Br. 2. We therefore lack jurisdiction to review the BIA's fully vacated first decision in Dkt. No. 21-6265, since it is no longer a "final order of removal." *See* 8 U.S.C. § 1252(a)(1) (limiting judicial review to a "final order of removal").

## DISCUSSION

Ordinarily, we "lack jurisdiction to review final orders of removal" made under certain provisions of the INA, including, as relevant here, 8 U.S.C. § 1227(a)(2)(A)(iii) and (B). *Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009); *see also* 8 U.S.C. § 1252(a)(2)(C). We do, however, have jurisdiction to review "constitutional claims or questions of law, including whether a specific conviction constitutes an aggravated felony." *Pierre*, 588 F.3d at 772. We review that question without deferring to the BIA or the IJ. *Id.*; *see also* 8 U.S.C. § 1252(a)(2)(D).

As explained above, Stankiewicz admits that she was convicted in 2003 of violating § 2C:35-7. And she concedes that if a § 2C:35-7 conviction is an "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43)(B), then she cannot apply for cancellation of removal under § 1229b(a). The issue before us, therefore, is whether Stankiewicz's § 2C:35-7 conviction is for an aggravated felony so that she is barred from applying for cancellation of removal.

"When the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA, we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." *Hylton v. Sessions*, 897 F.3d 57, 60 (2d Cir. 2018) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)). Under that approach, we "identify the minimum criminal

conduct necessary for conviction under a particular statute" by examining only the statute's elements, not the case's underlying facts. *Id.* "If the criminal statute punishes conduct that falls outside the INA's definition," then the crime is not a categorical match to the relevant federal analog. *Chery v. Garland*, 16 F.4th 980, 983–84 (2d Cir. 2021); *see also Mathis v. United States*, 579 U.S. 500, 504 (2016).

As detailed below, applying the categorical approach here requires us to answer three related questions: First, in choosing the federal comparator for purposes of the categorical match analysis, must we compare § 2C:35-7 to only the "closest" federal analog under the Controlled Substances Act (CSA), rather than any CSA analog? Second, is there a categorical match? And third, if there is no categorical match, is § 2C:35-7 "divisible" for purposes of a modified categorical analysis?

We answer each question in the negative. The INA's text, and case law interpreting it, establish that we must compare § 2C:35-7 to any CSA analog.[2] And

---

[2] We do not rule out the possibility that a state statute may be a categorical match to the CSA *as a whole*, even if it is not a categorical match to any *single* provision in the CSA. *See Hylton v. Sessions*, 897 F.3d 57, 60–61 (2d Cir. 2018) (explaining that under the categorical approach, we ask "whether the record of conviction of the predicate offense necessarily establishes conduct that the CSA, on its own terms, makes punishable as a felony") (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 197–98 (2013)). We can imagine a scenario in which every hypothetical application of a state statute would be a felony under *some provision* in the CSA, but each application might not be a felony pursuant to *the same single provision* in the CSA. Neither party argues this is such a case, and thus we need not, and do not, decide how the categorical match framework would apply in that circumstance.

we conclude that § 2C:35-7 is not a categorical match to either of the parties' proposed analogs. Nor is the state statute divisible. So, Stankiewicz's § 2C:35-7 conviction is not an "aggravated felony" under § 1101(a)(43)(B) that bars her from applying for cancellation of removal under § 1229b(a). We elaborate below.

## I. Proposed Federal Analogs

Stankiewicz argues that her § 2C:35-7 conviction for distributing a controlled substance on or near school property is an aggravated felony only if it categorically matches 21 U.S.C. § 860—a provision in the CSA that imposes enhanced penalties for distributing a controlled substance in a school zone. In Stankiewicz's view, we must compare § 2C:35-7 only to § 860 because § 860 is the "closest" CSA analog. Petitioner's Br. 19 (emphasis omitted). Stankiewicz's position finds support in Third Circuit precedent. *See Rosa*, 950 F.3d at 76. Her argument, however, runs contrary to the INA's text, as well as Supreme Court and Second Circuit case law interpreting it.

The INA lists numerous offenses that meet the definition of "aggravated felony." 8 U.S.C. § 1101(a)(43). The provision relevant to this case is § 1101(a)(43)(B), which defines "aggravated felony" to mean "illicit trafficking in a controlled substance . . . , including a drug trafficking crime (as defined in section 924(c) of Title 18)." *Id.* § 1101(a)(43)(B). Section 924(c) in turn defines "drug

9

trafficking crime" in relevant part as "*any* felony punishable under the Controlled Substances Act." 18 U.S.C. § 924(c)(2) (emphasis added). And Title 18 defines "felony" to mean an offense with a "maximum term of imprisonment" that exceeds "one year." 18 U.S.C. § 3559(a)(5). So, in order "for a state drug offense to qualify as a 'drug trafficking crime' and, by extension, an aggravated felony," the state offense "must correspond to an offense that carries a maximum term of imprisonment exceeding one year under the CSA." *Martinez v. Mukasey*, 551 F.3d 113, 117–18 (2d Cir. 2008).

Nothing in that statutory scheme limits the categorical analysis to the closest analog in the CSA to the state crime of conviction. Quite the opposite—§ 924(c)(2) explicitly states that "any" CSA felony is a "drug trafficking crime." Thus, if a state conviction is (1) a (categorical) CSA offense, and (2) subject to a sentence of more than one year of imprisonment under the CSA, then it is a "drug trafficking crime" under § 924(c)(2). That means it is, in turn, an "aggravated felony" under § 1101(a)(43)(B).

This plain reading of the text is backed up by case law. *See, e.g.*, *Moncrieffe*, 569 U.S. at 192 ("[T]o satisfy the categorical approach, a state drug offense must meet two conditions: It must 'necessarily' proscribe conduct that is an offense under the CSA, and the CSA must 'necessarily' prescribe felony punishment for

that conduct."); *Martinez*, 551 F.3d at 117–18; *Debique v. Garland*, 58 F.4th 676, 680 (2d Cir. 2023) ("[W]e look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." (quoting *Moncrieffe*, 569 U.S. at 190)), *petition for cert. filed*, No. 23-189 (Aug. 25, 2023); *Quito v. Barr*, 948 F.3d 83, 88–89 (2d Cir. 2020) (same); *Chery*, 16 F.4th at 984 ("We must determine whether both the acts proscribed and the substances involved in [the relevant state statute] categorically match the analogous federal statute."). In all these cases, we and the Supreme Court have said only that the state conviction must categorically match a corresponding CSA felony. We have never said that the corresponding felony must be the "closest" one to the state statute of conviction.

Stankiewicz insists that "[t]he Supreme Court has long commanded that Courts compare the 'closest' or 'most closely analogous' federal statute to the state statute of conviction." Petitioner's Br. 21. But we see no such "command" in the Supreme Court's case law involving drug trafficking aggravated felonies, or the meaning of "aggravated felony" more generally in the INA.

Likely for that reason, Stankiewicz instead cites Supreme Court case law involving the now-defunct residual clause in the "crime of violence" definition in

11

the Armed Career Criminal Act (ACCA). In particular, Stankiewicz cites *James v. United States*, a case in which the Court applied the categorical approach and considered whether the elements of a state law attempted burglary conviction were of the type that would justify its inclusion within the residual clause of the "violent felony" definition in the ACCA.[3] 550 U.S. 192, 197 (2007). The ACCA defined "violent felony," as relevant in *James*, to "mean[] any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . ." 18 U.S.C. § 924(e)(2)(B)(ii). In applying the categorical analysis, the *James* Court explained that "[t]he specific offenses enumerated in [§ 924(e)(2)(B)(ii)] provide one baseline from which to measure whether other similar conduct 'otherwise . . . presents a serious potential risk of physical injury.'" 550 U.S. at 203 (quoting § 924(e)(2)(B)(ii)). Thus, the Court reasoned that "[i]n this case, we can ask whether the risk posed by attempted burglary is comparable to that posed by its *closest analog among the enumerated offenses*—here, completed burglary." *Id.* (emphasis added).

---

[3] The Supreme Court has since held that the residual clause is void for vagueness. *See Johnson v. United States*, 576 U.S. 591, 597 (2015).

12

*James* is inapposite. In *James*, the residual clause against which the Court was comparing the state law offense was a catch-all that immediately followed a list of enumerated offenses in the very same provision within the definition of violent felony in the ACCA. It thus made perfect sense to compare the state statute of conviction to the most closely analogous enumerated offense to determine whether the state conviction was categorically included in the now-defunct residual clause. But the INA's "aggravated felony" definition as it relates to controlled substances is worded and structured completely differently. It does not include a comparable list of specifically enumerated offenses followed by a catch-all residual clause; rather, the definition broadly encompasses "any felony punishable under the Controlled Substances Act." 18 U.S.C. § 924(c)(2). The Court's reasoning in *James* thus tells us nothing about the definition of "aggravated felony" as it relates to a controlled substance offense.

In sum, the INA's text, and case law applying the categorical approach to INA aggravated felonies, explain that "[t]he aggravated felony at issue here, illicit trafficking in a controlled substance, . . . encompasses all state offenses that 'proscribe conduct punishable as a felony under the CSA.'" *Moncrieffe*, 569 U.S. at 192 (quoting *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006)) (cleaned up). Accordingly,

§ 2C:35-7 is an aggravated felony if it categorically matches any CSA felony, not

just the closest CSA analog.

## II.  Categorical Analysis

Because § 2C:35-7 is an aggravated felony if it categorically matches any

CSA felony, we apply the categorical analysis to both the CSA offense cited by

Stankiewicz—21 U.S.C. § 860—and the CSA offense cited by the government—21

U.S.C. § 841.  Section 2C:35-7's minimum conduct, however, is broader than both

federal analogs.  So there is no categorical match.

Section 2C:35-7,[4] as relevant to this case, reads:

> Any person who violates subsection a. of N.J.S.2C:35-5
> by distributing, dispensing or possessing with intent to
> distribute a controlled dangerous substance or controlled
> substance analog while on any school property used for
> school purposes which is owned by or leased to any
> elementary or secondary school or school board, or
> within 1,000 feet of such school property or a school bus,
> or while on any school bus, is guilty of a crime of the
> third degree . . . .

N.J. Stat. § 2C:35-7(a) (1997).

---

[4] The version of § 2C:35-7 that applied when Stankiewicz was convicted became effective in 1997 and was amended in 2009.  The text relevant to this case, however, is the same in both versions.

14

Section 2C:35-7 refers to § 2C:35-5(a), which, as in effect when Stankiewicz was convicted,[5] states in pertinent part:

> [I]t shall be unlawful for any person knowingly or purposely:
>
> (1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog; or
>
> (2) To create, distribute, or possess or have under his control with intent to distribute, a counterfeit controlled dangerous substance.

N.J. Stat. § 2C:35-5(a) (2000).

### A. Comparison to Section 860

The federal school zone statute, 21 U.S.C. § 860, reads, as relevant here:

> Any person who violates section 841(a)(1) of this title or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school . . . shall be sentenced under this subsection to a term of imprisonment of not less than one year. The mandatory minimum sentencing provisions of this paragraph shall not apply to offenses involving 5 grams or less of marihuana.

21 U.S.C. § 860(a).

---

[5] The version of § 2C:35-5 that applied when Stankiewicz was convicted became effective in 2000 and was amended in 2021. The text relevant to this case is also the same in both versions.

For at least two reasons, § 2C:35-7 criminalizes a broader range of conduct than § 860. First, unlike § 860, § 2C:35-7 criminalizes "dispensing" a controlled substance or controlled substance analog in a school zone. In New Jersey, "dispense" means to "deliver a controlled dangerous substance . . . to an ultimate user or research subject by or pursuant to the lawful order of a practitioner, including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for that delivery." N.J. Stat. § 2C:35-2 (2000).[6] The definition of "dispense" under the CSA is nearly identical. *See* 21 U.S.C. § 802(10). Yet "dispense" appears nowhere in the federal school zone statute. Thus, for example, packaging a controlled substance would be "dispensing" that could violate § 2C:35-7; but it would not be "distributing, possessing with intent to distribute, or manufacturing a controlled substance" necessary to violate § 860(a).

Second, § 2C:35-7 criminalizes offense conduct in a wider range of locations than § 860(a). For instance, § 2C:35-7 criminalizes offense conduct on a school bus. Section 860, by contrast, criminalizes only offense conduct that happens "on, or within one thousand feet of, the *real property* comprising a public or private

---

[6] "Dispense" means the same thing under today's version of § 2C:35-2 that it did under the 2000 version in effect when Stankiewicz was convicted.

16

elementary, vocational, or secondary school." 21 U.S.C. § 860(a) (emphasis

added). School buses are not real property. *See Property*, Black's Law Dictionary

(11th ed. 2019). So, offense conduct that happens on a school bus that is more than

1,000 feet away from real school property would violate § 2C:35-7, but not § 860.

Accordingly, because § 2C:35-7 criminalizes conduct that is not a felony

under § 860, the two statutes are not a categorical match.

### B. Comparison to Section 841

The federal distribution statute, 21 U.S.C. § 841, reads in part:

> Except as authorized by this subchapter, it shall be
> unlawful for any person knowingly or intentionally—
>
>> (1) to manufacture, distribute, or dispense, or
>> possess with intent to manufacture, distribute, or
>> dispense, a controlled substance; or
>
>> (2) to create, distribute, or dispense, or possess
>> with intent to distribute or dispense, a counterfeit
>> substance.

21 U.S.C. § 841(a).

However, Section 841 also excludes from felony treatment a § 841(a)

conviction based on "distributing a small amount of marihuana for no

remuneration." *Id.* § 841(b)(4); *see also id.* § 844(a). And although the CSA does not

define "small amount," we have previously held "that an ounce . . . is a 'small

amount' of marijuana within the meaning of 21 U.S.C. § 841(b)(4)." *Hylton*, 897

F.3d at 59.  Thus, under our case law, a conviction for distributing an ounce or less of marijuana is not a CSA felony.

But while distributing an ounce or less of marijuana without remuneration is not a felony under § 841, it can still support a § 2C:35-7 conviction.  The New Jersey statute expressly contemplates "violation[s] involv[ing] less than one ounce of marijuana."  § 2C:35-7(a).  One who "distribut[es]" less than an ounce of marijuana without remuneration is therefore "guilty of a crime of the third degree"—the same crime for which Stankiewicz was convicted.  *Id.*

Section 2C:35-7 thus criminalizes conduct that would not be a felony under § 841, meaning that the statutes are also not a categorical match.[7]

## III.    Divisibility

Where, as here, there is no categorical match, we must determine whether the state statute of conviction is "divisible."[8]  A divisible statute "lists elements in

---

[7] This Court previously reached the same conclusion regarding a closely analogous New Jersey statute in an unpublished summary order.  *See Smith v. Barr*, 809 F. App'x 54, 55–56 (2d Cir. 2020) (summary order).

[8] We reject Stankiewicz's argument that we must remand for the BIA to assess divisibility in the first instance.  Although we have in many contexts deemed it "wiser and more prudent" to afford the BIA the opportunity to consider such issues "in the first instance," we also have stressed that we are not "required to remand to the BIA for an initial decision on" divisibility since "the BIA is not charged with the administration of" state or federal criminal laws.  *James v.*

the alternative, and, in doing so, creates a separate crime associated with each alternative element." *Harbin v. Sessions*, 860 F.3d 58, 64 (2d Cir. 2017); *see also Descamps v. United States*, 570 U.S. 254, 257–58 (2013). Conversely, "an indivisible statute creates only a single crime, but it may spell out various factual ways, or means, of committing some component of the offense." *Harbin*, 860 F.3d at 64 (quoting *Mathis*, 579 U.S. at 506) (cleaned up).

The Supreme Court's opinion in *Mathis* offers a helpful illustration of when an indivisible statute "spells out" various factual ways of committing an offense, without turning those factual ways into elements that make a statute divisible:

> [S]uppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime . . . a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a "deadly weapon."

*Mukasey*, 522 F.3d 250, 256 (2d Cir. 2008). Moreover, this Court, considering a closely related New Jersey statute that for purposes of the divisibility analysis is indistinguishable from § 2C:35-7, has already addressed the divisibility question following a remand to the BIA. *See Smith v. Garland*, No. 21-6278-ag, 2023 WL 7147426 (2d Cir. Oct. 31, 2023) (summary order) (considering whether N.J. Stat. § 2C:35-7.1 is a categorical match to a CSA felony). Given that we previously remanded a nearly identical question for the BIA's consideration in the first instance, and then addressed the issue, albeit in an unpublished summary order, a remand in this case would add little to our understanding of the BIA's assessment of the divisibility question.

19

*Mathis*, 579 U.S. at 506 (cleaned up).

To determine whether the statute is divisible, we look to the statute's text and state court decisions interpreting it. *Harbin*, 860 F.3d at 64–67. If we cannot find a "clear answer[]" from these state law sources, then we may turn to "the record of a prior conviction itself." *Id.* at 67 (quoting *Mathis*, 579 U.S. at 518) (emphasis omitted).

The text of § 2C:35-7 plainly reveals that the statute creates a single crime with a variety of factual means of committing it. Section 2C:35-7(a) states only that the defendant must violate N.J. Stat. § 2C:35-5(a) by "distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on" or near various school-related locations. The incorporated statutory provision, § 2C:35-5(a), in turn, references only "a controlled dangerous substance or controlled substance analog, . . . or a counterfeit controlled dangerous substance." The terms "controlled dangerous substance" and "controlled substance analog" are defined in a separate provision, and include substances listed in various schedules, as well as various substances listed in statutory definitions. *See* N.J. Stat. § 2C:35-2. Thus, under § 2C:35-7, certain conduct relating generally to "controlled substances" and "controlled substance analogs" is unlawful; the statute does not distinguish among the various defined

controlled substances for purposes of the elements of the offense, or the consequences of a conviction (except with respect to violations involving less than one ounce of marijuana). *Cf. Chery*, 16 F.4th at 985–86 (concluding that a New York statute was divisible because the statute's plain text suggested "that *either* a 'hallucinogenic substance other than marijuana' *or* a 'narcotic substance' [must be] involved" in a violation, and distinguishing the indivisible statute in *Harbin*, which, by contrast, criminalized selling "controlled substance[s]" generally).

The government points out that, on this view, someone who sells multiple drugs in a single transaction can be found guilty of multiple § 2C:35-7 counts. That's true. *See, e.g.*, *State v. Royer*, No. A-4998-05T1, 2007 WL 3130662, at *1 (N.J. Super. Ct. App. Div. Oct. 29, 2007) (explaining that § 2C:35-7 refers to a singular "controlled dangerous substance," so "[t]he sale of multiple drugs in a school zone constitutes separate offenses for each drug sold"). But it does not follow that just because the government *can* bring multiple § 2C:35-7 charges based on a single transaction involving more than one controlled substance that drug type is a *required element* of a § 2C:35-7 conviction.

Imagine, for example, that someone is charged with a single § 2C:35-7 count, but the government offers evidence at trial that this hypothetical defendant distributed both heroin and cocaine, in a single transaction, within 1,000 feet of a

21

school. And suppose the jury ultimately found this person guilty. Presuming that the government established the statute's other elements, the conviction would stand if every juror found beyond a reasonable doubt that the defendant had distributed just cocaine. It also would still stand if some of the jurors found beyond a reasonable doubt that the defendant had distributed cocaine but not heroin, while the other jurors found that the defendant had distributed heroin but not cocaine. Either way, the jurors would all agree that the defendant had distributed "a controlled dangerous substance," which is all § 2C:35-7 requires. *See Harbin*, 860 F.3d at 65 (explaining that a New York statute prohibiting knowingly and unlawfully selling a "controlled substance," which was defined to include a variety of schedule I–V substances, "creates only a single crime, but provides a number of different factual means by which that crime may be committed"); *Mathis*, 579 U.S. at 506. The fact that the government *could have* brought two § 2C:35-7 charges—one based on each substance type—doesn't turn drug type into an element that must be proven to sustain a conviction. *See Mathis*, 579 U.S. at 504 (explaining that "'[e]lements' are the constituent parts of a crime's legal definition" that "the jury must find beyond a reasonable doubt to convict the defendant") (cleaned up).

We also reject the government's argument that § 2C:35-7 is divisible because § 2C:35-5(b) specifies different sentences, based on drug type, for violations of § 2C:35-5(a). *See Mathis*, 579 U.S. at 518 ("If statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466, 490 (2000),] they must be elements.").

For starters, § 2C:35-7, the crime of conviction here, refers only to § 2C:35-5(**a**)—it doesn't refer to § 2C:35-5(**b**). As noted above, § 2C:35-5(a) does not distinguish among drug types. Only § 2C:35-5(**b**) does that. And all § 2C:35-5(b) does is set the potential sentences for § 2C:35-5(a) violations; it has no bearing on the sentence associated with a § 2C:35-7 violation. Rather, every § 2C:35-7 offense—no matter the drug type or quantity—is still a third-degree offense.[9] In other words, even assuming that § 2C:35-5's degree-based distinctions between

---

[9] Unlike § 2C:35-5, the only place that § 2C:35-7 makes any distinction between substance type or quantity is by noting in § 2C:35-7(a) that a conviction involving less than an ounce of marijuana results in a minimum term of ineligibility for parole either between one-third and one-half of the sentence imposed or one year, whichever is greater. All other § 2C:35-7 convictions require a minimum term of parole ineligibility that is either between one-third and one-half of the sentence imposed or *three* years, whichever is greater. But *any* § 2C:35-7 offense is a crime of the third degree, which is punishable by a term of imprisonment between three and five years. N.J. Stat. 2C:43-6(a)(3) (1993). The government does not argue that the differing minimum terms of parole ineligibility for violations involving a small amount of marijuana and those involving all other substances suggest that the statute is divisible as to substance. Instead, the government's divisibility argument about sentencing is based on the differing degrees of § 2C:35-5(**b**) offenses.

drug type and quantity make § 2C:35-5 divisible—a question we need not and do not address here—that distinction does not exist in § 2C:35-7 cases like this one.

For that reason, we are unpersuaded by the government's citations to New Jersey cases interpreting § 2C:35-5 instead of § 2C:35-7.  *See* Respondent's Br. 18–19 (citing *State v. Rivastineo*, 149 A.3d 321, 324 (N.J. Super. Ct. App. Div. 2016); *State v. Torres*, 563 A.2d 1141, 1144–45 (N.J. Super. Ct. App. Div. 1989); *State v. Jordan*, 563 A.2d 463, 464 (N.J. Super. Ct. App. Div. 1989)).

Instead, more comparable New Jersey case law supports our conclusion that § 2C:35-7 is indivisible.  For example, in *State v. Williams*, the defendant was convicted of, among other counts, distributing a controlled substance within a public housing zone, in violation of a very similar statute, N.J. Stat. § 2C:35-7.1(a).[10] No. A-4277-11T2, 2014 WL 1577785, at *1 (N.J. Super. Ct. App. Div. Apr. 22, 2014). Although the state charged the defendant with only one § 2C:35-7.1 count, it adduced evidence that the defendant had been distributing both cocaine and heroin in a series of transactions.  *Id.* at *1–2.  On appeal, the defendant challenged the state's mid-trial amendment of the indictment; originally, the indictment had

---

[10] Like § 2C:35-7, § 2C:35-7.1 prohibits violating § 2C:35-5(a) by "distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog," but instead of locationally prohibiting such conduct within 1,000 feet of school property or a school bus, § 2C:35-7.1 prohibits this conduct "while in, on or within 500 feet of the real property comprising a public housing facility, a public park, or a public building."  N.J. Stat. § 2C:35-7.1(a).

stated that the defendant had distributed *heroin*, but after it had presented testimonial evidence, the state amended the indictment to specify that the defendant had distributed *cocaine*. *Id.* at \*3. The Appellate Division held that the indictment could be amended because "the specification of a fact related to the commission of the crime may be amended if that fact does not serve as an essential element of the crime," *id.*, and the amendment, "[a]t most . . . constituted a specification of a fact, which did not serve as an essential element of the alleged crimes," *id.* at \*4. *See also id.* ("Whether defendant was charged with distribution of cocaine within a public housing facility or distribution of heroin within a public housing facility is of no moment. The *essential element* of both the greater and the lesser-included offenses is the presence of *any controlled dangerous substance.*" (emphases added)).

Finally, the government asks that we "peek" at relevant New Jersey model jury instructions, which it argues "confirm" that drug type and quantity are elements the government must prove to sustain a § 2C:35-7 conviction. Respondent's Br. 19 (cleaned up). But "[a]n appeal to pattern jury instructions is unwarranted here," *Harbin*, 860 F.3d at 67, since it is clear that § 2C:35-7 is not divisible, *see Mathis*, 579 U.S. at 518 (explaining that courts should look at the prior conviction record only "if state law fails to provide clear answers").

In any event, the model jury instructions the government proffers do not show that drug type is an essential element of a § 2C:35-7 conviction. The model instructions, as existed when Stankiewicz was convicted, state in relevant part:

> [T]he elements of distributing or dispensing a controlled dangerous substance are:
>
> (1) S_____ is (insert appropriate controlled dangerous substance or controlled substance analog)
> (2) That the defendant distributed S_____ on the date alleged in the indictment.
> (3) That the defendant acted knowingly or purposely in doing so.

N.J.-JICRIM 2C:35-7 (West 1992).

True, the instructions include a blank space and instruct the court to "insert" the "appropriate controlled dangerous substance or controlled substance analog." *Id.* But "the instructions do not say it is impermissible to identify more than one substance." *Harbin*, 860 F.3d at 68. Nor do they suggest that it would be inappropriate for some jurors to specify one controlled substance and for other jurors to identify a different one.

The jury instructions thus support the same conclusion as § 2C:35-7's text and relevant New Jersey case law: the statute creates a single crime with a variety of factual means of committing that crime. Section 2C:35-7 is not divisible.

\* \* \*

In sum, § 2C:35-7 is not a categorical match to any identified CSA analog, and the state statute is not divisible. Stankiewicz's § 2C:35-7 conviction therefore is not an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(B) that would make her ineligible to apply for cancellation of removal pursuant to 8 U.S.C. § 1229b(a).

## CONCLUSION

For the foregoing reasons, Stankiewicz's petition for review is **GRANTED**, the agency's decision is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this opinion.